In re NEW YORK CITY SHOES, INC.,
Debtor.

NEW YORK CITY SHOES,
INC., Appellant,

v.

BENTLEY INTERNATIONAL,
INC., Appellee.

No. 89–1051.

United States Court of Appeals,
Third Circuit.

Argued May 23, 1989.

Decided July 12, 1989.

Pauline K. Morgan (argued), Douglas J. Smillie, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellant.

Joseph I. Mezrahi (argued), New York City, for appellee.

Before BECKER, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

The bankruptcy code allows the debtor's trustee to avoid certain preferential transfers made by the debtor to a creditor within the 90–day period before the debtor filed its petition in bankruptcy. *See* 11 U.S.C. § 547(b) (1982 & Supp. V 1987). However, 11 U.S.C. § 547(c)(4) (1982) allows a creditor to retain an otherwise voidable preference if the creditor gave the debtor new value after the preferential transfer. This appeal presents the question of when a postdated check given by a debtor to a creditor should be deemed transferred for purposes of section 547(c)(4). We hold that there is a presumption that postdated checks are transferred for section 547(c)(4) purposes either on the date on the face of the check or on the date that the check clears the bank,[1] as opposed to the date on which the check was delivered. We further hold that this presumption can be rebutted if the creditor can demonstrate that the parties treated the transaction as though it were a cash transaction and that if the creditor rebuts the presumption, the date of transfer should be considered to be the date that the debtor delivered the check to the creditor.

---

1. We need not decide which under the facts of this case.

The appeal also requires us to decide whether, on the facts of this case, the bankruptcy court erred in finding that the creditor has established that it treated the transaction as a cash transfer on the day it received the post-dated check. We believe that finding to be clearly erroneous, and thus, because we find that the new value in this case was given before the preferential transfer, we hold that the exception provided by section 547(c)(4) does not apply.

## I

The facts are straightforward. In November 1986 the debtor, New York City Shoes ("NYC"), received a shipment of shoes worth $15,960 from its creditor, Bentley International, Inc. ("Bentley"). In February 1987, NYC ordered more shoes, but Bentley refused to ship because NYC had not yet paid the November bill. At the beginning of March, NYC sent two checks to Bentley to cover the amount due from the November shipment. One of the checks, worth $7,960, was postdated April 1, 1987.

On March 3 and March 10, 1987, Bentley shipped additional shoes, worth $40,000, to NYC. Bentley attempted to deposit the postdated check on April 1, but at first the bank refused to cash it because there were insufficient funds in NYC's account. The check finally cleared the bank on April 13, 1987. On July 7, 1987, NYC filed a petition in bankruptcy.

## II

For clarity's sake we will first discuss the relevant provisions of the bankruptcy code and then turn to the procedural history of the instant case. The bankruptcy code provides that a trustee in bankruptcy:

> may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of the creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—

> (A) on or within 90 days before the date of the filing of the petition....

11 U.S.C. § 547(b). However, even if a creditor has received a preference that is voidable pursuant to section 547(b), the creditor may nonetheless keep the preferential transfer, if the transfer meets the criteria enunciated in any of the subsections of section 547(c). The only subsection relevant to the instant case is section 547(c)(4), which provides that:

> The trustee may not avoid under this section a transfer ...
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> > (A) not secured by an otherwise unavoidable security interest; and
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

The three requirements of section 547(c)(4) are well established. First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the creditor for the "new value" as of the date that it filed its bankruptcy petition. *See In re Almarc Manufacturing, Inc.*, 62 B.R. 684, 686 (Bankr.N.D.Ill.1986). If a creditor satisfies these elements, it is entitled to set off the amount of the "new value" which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received. *Id.*

Section 547(c)(4) has two interrelated purposes. First, the section is designed "to encourage trade creditors to continue dealing with troubled businesses." *In re Gold Coast Seed Co.*, 30 B.R. 551, 553 (Bankr. 9th Cir.1983). In the ordinary course of business, suppliers provide goods to businesses on credit. The financial pressure that would result if creditors were to force an ailing company to pay for supplies up-

front could turn many a troubled company into a bankrupt one. By allowing creditors to rely on payments of back debt in shipping new goods, section 547(c)(4) serves the purpose of avoiding unnecessary bankruptcies.

Second, section 547(c)(4) is designed to "treat fairly a creditor who has replenished the estate after having received a preference." *Almarc*, 62 B.R. at 688. *See also In re American International Airways, Inc.*, 68 B.R. 326, 337 (Bankr.E.D.Pa.1986) (Section 547(c)(4) "protects creditors who deal with financially unstable businesses and reasonably rely on their payments as a consideration for providing these future services."). This point is illustrated by the following hypothetical discussed by Judge Ginsberg in *Almarc*.

Creditor C sells on credit $1000 worth of goods to Debtor D. D subsequently asks C for an additional $1000 worth of goods. C refuses unless D pays for the initial shipment. D does so, and C ships the $1000 worth of new merchandise. If D files for bankruptcy less than 90 days after he paid C for the initial shipment, assuming that the other criteria of section 547(b) were met and that section 547(c)(4) were not applied, the trustee would be able to recoup the $1000 that D paid to C for the first shipment. In that case, D's estate would be $2000 richer at C's expense; it would have received $2000 of goods while paying C nothing. However, if the payment and the second shipment had not occurred, the estate would be enriched only by $1000 (the value of the first shipment). For no justifiable reason, D ends up in a better position as a result of the payment and the new shipment, whereas C ends up worse off. Furthermore, even though C never agreed to risk more than $1000 on D, C ends up losing $2000. *See Almarc*, 62 B.R. at 688. The enactment of section 547(c)(4) obviates this problem. Section 547(c)(4), therefore, is intended to prevent needless bankruptcies and to treat fairly creditors who deal with troubled companies.

## III

The trustee for NYC brought suit in bankruptcy court, pursuant to section 547(b), to avoid the transfer of the $7,960. Bentley contended from the outset that the preference was not voidable because it fell within the exception provided by section 547(c)(4). As discussed above, there are three elements involved in § 547(c)(4) analysis. The parties have stipulated to the first element—that the transfer was otherwise a voidable preference within the meaning of § 547(b).[2] And they agree that the third element has been met: NYC never paid Bentley for the shoes shipped in March. With respect to the second element, they agree that the shipment of shoes in March constituted the provision of new value. They disagree solely on the

**2.** Bentley stipulated in the bankruptcy court that all of the elements of § 547(b) were met. *See* Bankr.Trans. at 4, JA at 12. However, in a supplemental letter to this court, Bentley contended that it was possible that the transfer did not fall within the ninety day period for voiding preferences, pursuant to § 547(b)(4). Then in oral argument before this court Bentley once again conceded that all of the elements of § 547(b)(4) were met. We deem any argument that the transfer date of the check for § 547(b) purposes was outside the ninety-day period to be waived based on Bentley's stipulation in the bankruptcy court that all of the provisions of § 547(b) were met.

In order to avoid confusion, however, we do note that many courts have held, and both parties agree, that the date a check is deemed transferred for purposes of section 547(b) does not have to be the same date that the same check is deemed transferred for purposes of § 547(c)(4). *See, e.g., Almarc*, 62 B.R. at 688–

89; *In re Philadelphia Light Supply Co.*, 33 B.R. 734, 739 (Bankr.E.D.Pa.1983); *Gold Coast Seed*, 30 B.R. at 553. These courts have reasoned that because the purpose of the two sections are completely different there is no reason to define "transfer" the same way for both. *See, e.g., Gold Coast Seed*, 30 B.R. at 553. Furthermore, a majority of courts have determined that the date of transfer of a check for purposes of section 547(b) is the date that it clears the bank. *See, e.g., In re W & T Enterprises, Inc.*, 84 B.R. 838, 839 (Bankr.M.D.Fla.1988); *In re Newman Companies, Inc.*, 83 B.R. 571, 572 (Bankr.E.D. Wis.1988); *In re Video East, Inc.*, 33 B.R. 61, 62–63 (Bankr.E.D.Pa.1983). Under the reasoning of such courts, the check at issue in this case would be deemed transferred for § 547(b) purposes on April 13, and thus would fall within the ninety day period for avoiding transfers (which began on April 8), no matter which date the check was deemed transferred for § 547(c)(4) purposes.

question whether the transfer of money from NYC to Bentley occurred before or after the March transfer of shoes from Bentley to NYC. Bentley contends that the transfer should be deemed to have occurred in early March, the date that it received the check, which is before it shipped the shoes.[3] NYC contends that a postdated check should be deemed transferred on the date that the check clears the bank and thus that the transfer occurred on April 13, after the March shoe shipment.

The bankruptcy court held that a postdated check is deemed transferred for purposes of section 547(c)(4) at the time of receipt. It thus agreed with Bentley that the transfer occurred in early March, before Bentley shipped the shoes. It concluded that after the $7,960 was transferred, Bentley gave new value to NYC, and, consequently, that the transfer was not voidable. Alternatively, the bankruptcy court found as a matter of fact that "[t]he Defendant's Controller credibly testified that the new value was given solely because of receipt of the post-dated check, and that the transaction *was* treated as a cash transaction by the parties." Bankr.Ct.Op. at 4. It found this to be an alternative basis for holding that the transfer occurred in early March, and thus that the new value exception applied. NYC appealed to the district court.

The district court rejected the standard formulated by the bankruptcy court. It held that a postdated check is only deemed transferred at the time of receipt if the parties reasonably treated the transaction as a cash transaction. As the district court explained

> [t]he new value exception rests on the assumption that the creditor is reasonably relying on the check and, on that basis, extends new value to the debtor. Delivery of a post-dated check does not constitute a transfer for purposes of § 547(c), unless the parties intended to rely on the check as cash and that reliance was reasonable under the circumstances.

Dist.Ct.Op. at 2. The district court nonetheless affirmed the order of the bankruptcy court. It held the bankruptcy court's factual finding that the parties did treat the transaction as a cash transaction was not clearly erroneous. Consequently, it concluded that the transfer occurred at the time that the check was delivered to Bentley, and thus that there was new value delivered after the transfer and that the trustee could not avoid the preference.

NYC appealed to this Court. Our review of matters of law determined by the district court is plenary.[4] In reviewing determinations of fact "we review the bankruptcy court's findings by the standards the district court should employ," *Universal Minerals, Inc. v. C.A. Hughes Co.*, 669 F.2d 98, 102 (3d Cir.1981). Consequently, we ask whether the factual findings of the bankruptcy court were clearly erroneous,

---

**3.** Although the record does not reveal the precise date on which the check was received, it is acknowledged by the parties that it was prior to the March 3rd shipment.

**4.** NYC contends that we may not consider the issue of what the appropriate legal standard is for determining the transfer date of postdated checks pursuant to 11 U.S.C. § 547(c)(4) because it has not challenged the legal standard adopted by the district court and Bentley has not cross-appealed. NYC contends that absent a cross-appeal, Bentley is not entitled to challenge the standard adopted by the district court.

    NYC is incorrect in asserting that Bentley was obliged to take a cross-appeal in order to challenge the legal standard employed by the district court. This Court has previously made clear that cross-appeals are only necessary when the appellee seeks to attack an order " 'with a view either to enlarging his own rights thereun-

der or of lessening the rights of his adversary.' " *Scott v. University of Delaware*, 601 F.2d 76, 82 n. 12 (3d Cir.) (quoting *United States v. American Railway Express Co.*, 265 U.S. 425–35, 44 S.Ct. 560–64, 68 L.Ed. 1087 (1924)), *cert. denied* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). An appellee may " 'without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court.' " *Id.* In its brief, Bentley argues that we should adopt the legal rule applied by the bankruptcy court. To this extent, Bentley is simply urging us to affirm the order of the district court, which declared that NYC could not recover the preference, on an alternate ground. Consequently, Bentley was not obliged to cross-appeal on this issue, and we may consider it.

and we do not defer to the district court's determination on that issue.

## IV

In the case at bar, both parties agree that for purposes of section 547(c)(4), the date of transfer of a currently dated check is the date that the check is delivered to the creditor. We note, however, that this proposition is not settled law.

> Some [courts] have adopted the simple rule that a transfer occurs only when the check is paid, regardless of when it is delivered. [O]thers have held that the transfer occurs when the check is honored if payment is more than ten days after delivery, or, alternatively when delivered if payment is within ten days, or when delivered if paid within thirty days.... Still others have held that a check is deemed transferred upon delivery if subsequently honored by the drawee bank.

*In re Bob Grissett Golf Shoppes, Inc.,* 78 B.R. 787, 791 (E.D.Va.1987) (citations omitted). Since the question of the treatment of currently dated checks under section 547(c)(4) is not an issue in the case *sub judice,* we make no holding on the matter. However, looking at the reasoning employed by courts dealing with currently dated checks is helpful in discerning how the policies of section 547(c)(4) can be best met.

Courts have reasoned that allowing creditors to rely on the receipt of a check and ship new merchandise, rather than requiring them to wait until the check is honored by the bank, serves the purposes of section 547(c)(4) because it allows the debtor to continue to conduct its business in an ordinary manner. Ordinarily, creditors will ship goods upon receipt of a check. *See Bob Grissett,* 78 B.R. at 791 ("[S]ince § 547(c)(4) was intended to encourage creditors to continue doing business with a troubled enterprise generally creditors should be allowed to rely on receipt of a check rather than waiting for it to be hon-

ored."). In contrast, if the time of transfer of a currently dated check were deemed to be the date that the check cleared the bank, shaky companies may be pressured because creditors might wait longer before shipping them goods.

Courts have noted that the "date of delivery" rule for currently dated checks could also further the fairness purpose of section 547(c)(4):

> In most cases, *absent a post-dated check* or a request to hold the check, parties in a normal business transaction would, as the parties did here, treat a check as a cash transaction and extend new credit immediately upon receiving a check in payment of a prior debt rather than waiting until the check has cleared to send new goods.... There is no policy reason why a creditor who waits for a check to clear before shipping should get the benefit of the § 547(c)(4) setoff while a creditor who, doing what most business people do, ships on receipt of a check should be denied a setoff.

*Almarc,* 62 B.R. at 688 (emphasis supplied). *Cf. Braniff Airways, Inc. v. Midwest Corp.,* 873 F.2d 805, 806–08 (5th Cir. 1989) (date of transfer of a currently dated check under § 547(c)(2) is the date of delivery).

NYC contends that these policy reasons do not translate to the situation of a post-dated check. We agree. As noted above, the purposes of section 547(c)(4) are to continue to allow shaky companies to operate on an ordinary basis and to be fair to creditors who believed that they had been paid post-due debt and shipped goods in reliance. But postdating checks is not business as usual, and there is no evidence that Congress wanted creditors to treat insolvent companies better than solvent ones. Furthermore, in the ordinary case, it does not seem reasonable for a creditor to rely on a postdated check as cash, since the postdated check is nothing more than a promise of money in the future. Thus there seems to be little reason in the ordinary course to consider a postdated check

to be transferred on the date it is delivered. *See Bob Grissett*, 78 B.R. at 791–92.

That said, we concede that there may be individual cases in which a check is so slightly postdated, the solvency of the debtor is so patent or widely believed, or the intent of the parties is so explicit, that it becomes clear that the parties were treating the postdated check as cash. We thus hold that there is a presumption that a postdated check is not transferred on the date it is delivered, but that the presumption can be rebutted by evidence that in fact the parties did treat the postdated check as cash.[5]

To say that a postdated check is not transferred on the date of delivery does not, however, fully resolve the issue of when the check is transferred. There are two other times at which the check might be considered transferred—at the date on the face of the check or at the time that the check clears the bank. But the result in this case would be the same no matter which of those two dates were selected. In this case, the face date of the check was April 1, 1987, and it cleared the bank on April 13, 1987. Since the shoes were shipped on March 3, in either case the new value was given before the transfer. Consequently, in either case, the section 547(c)(4) exception does not apply, and the trustee may avoid the transfer. Because it makes no difference to the result in this case, we leave for another day the question whether a postdated check will be presumed transferred on the date on the face of the check or on the date that it clears the bank.

## V

■ The foregoing discussion does not decide the case *sub judice*. As noted above, the bankruptcy court found that the parties treated the delivery of the postdated check as a cash transaction. Unless we set aside this finding as clearly erroneous, Bentley will have rebutted the presumption, the check will be deemed transferred at the beginning of March (before the shoes were shipped), and Bentley will be entitled to retain the preference.

The only testimony on the subject of how the check was treated by the parties was given by Bentley's Controller, Shimon Kolodny. Kolodny testified that Bentley would not have shipped the shoes in March had it not previously received the postdated check. Bankr.Trans. at 14. However, he also testified that NYC had told Bentley that it had sent postdated checks because "at the time [NYC] did not have the funds available." *Id.* at 13. Furthermore, in cross-examination, Kolodny testified as follows:

Q: When you saw those checks, were you not aware that you could not cash those checks until at least the dates on those checks?

A: Yes, I was.

Q: Okay. So at the time you received those checks in March, you really had not received payment for the November shipment?

A: No, but *I had like a note from them* which was more than just ...

Q: That's the ...

A: ... and ...

Q: ... way you consider those checks?

A: Yes.

*Id.* at 16–17 (emphasis added).

Bentley contends that Kolodny's testimony that Bentley would not have shipped the goods had it not received the postdated check was enough to support an inference that the parties had treated the transaction as a cash transfer. We disagree. Bentley need not have believed that it had received cash in order to ship the shoes. It could

---

5. The district court held that the creditor could prevail only if it proved both that it relied on the check as cash and that that reliance was reasonable. Because, in the instant case, we find that there is no evidence to support a finding that the creditor intended to rely on this check as cash, *see infra* Typescript at 15–17, we need not reach the issue of what the proper result would be if there were evidence that a creditor treated a post-dated check as cash in a situation in which such treatment was objectively unreasonable.

have believed that it received a note. In fact, Kolodny's testimony that NYC told Bentley that it did not currently have cash to back up the check and his testimony that he, as Bentley's controller, viewed the check as a note, render it indisputable that this was what Bentley believed.[6] That is because, as we have noted, Kolodny's testimony was the *only* testimony on point, and there was no other evidence from which an inference could be drawn.

We thus conclude that the bankruptcy court's finding that the parties treated the transfer of the postdated check as a cash transaction was clearly erroneous. Consequently, Bentley has not rebutted the presumption, and we must apply the general rule articulated above that the transfer date of a postdated check for purposes of 11 U.S.C. § 547(c)(4) is the date on the face of the check (April 1) or the date that the check cleared the bank (April 13). In either case, the March shipment of shoes predated the preference, and thus Bentley may not invoke a section 547(c)(4) defense. We will therefore reverse the judgment of the district court and remand with directions that it enter an order reversing the judgment of the bankruptcy court and remanding to the bankruptcy court for such further proceedings as are consistent with this opinion.

---

**6.** We also note that were we to hold that an inference can be drawn that the delivery of a postdated check was treated as a cash transfer simply because the creditor shipped merchandise after it received the check, we would be creating an exception that swallows the rule that we enunciated above. The issue of when to treat a postdated check as transferred for purposes of § 547(c)(4) only arises when the creditor acts as Bentley has in this case and ships goods after it receives a postdated check but before either the date on the check's face or the date that it clears the bank. If we held that the inference that Bentley suggests were proper, that inference could be drawn in every case.