**In re SAMAR FASHIONS, INC., Debtor.**

**SAMAR FASHIONS, INC., Plaintiff,**

v.

**MATISSE INTERNATIONAL, INC., Defendant.**

**Bankruptcy No. 88–10508S.
Adv. No. 89–0763S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 9, 1990.

Joseph B. Finlay, Jr., Philadelphia, Pa., for debtor-plaintiff.

Kevin J. Carey, Philadelphia, Pa., for defendant.

DAVID A. SCHOLL, Bankruptcy Judge.

**A.   FINDINGS OF FACT**

1.   The Debtor and Plaintiff, SAMAR FASHIONS, INC. (hereinafter "the Debtor"), a retailer/wholesaler of women's wear, filed the Chapter 11 bankruptcy case underlying this proceeding on February 17, 1988.   This proceeding was filed on August 18, 1989, and tried on December 6, 1989.

2.   The Defendant MATISSE INTERNATIONAL, INC. (hereinafter "the Defendant"), requested permission to submit post-trial Briefs, and the parties were provided until December 29, 1989, to simultaneously do so.[1]

3.   The Debtor made three payments to the Defendant, which it now seeks to avoid as preferential, which the parties agree are properly characterized as follows:

| Check No. | Check date | Payment date | Check amount |
|---|---|---|---|
| 24819 | 11/23/87 | 11/24/87 | $34,972.50 |
| 24820 | 11/23/87 | 11/24/87 | 14,040.00 |
| 24821 | 11/30/87 | 12/11/87 | 12,227.50 |

---

1.   Unfortunately, the Defendant did not strictly adhere to our order requiring that the Briefs be delivered to our chambers by 4:30 P.M. on December 29, 1989.   Its Brief was mailed on that date and did not arrive in our chambers until January 2, 1990.

4. The aforesaid payments by the Debtor were made to the Defendant in payment of the following invoices for goods, all of which designated the terms of payment as "Net 30:"

| Invoice Number | Invoice Amount | Invoice Date | Payment date |
|---|---|---|---|
| 27587 | $ 7,780.50 | 9/18/87 | 11/24/87 (ck. 24819) |
| 27606 | 12,558.00 | 9/18/87 | 11/24/87 (ck. 24819) |
| 27607 | 14,634.00 | 9/19/87 | 11/24/87 (ck. 24819) |
| 27639 | 7,104.00 | 9/22/87 | 11/24/87 (ck. 24820) |
| 27640 | 6,936.00 | 9/22/87 | 11/24/87 (ck. 24821) |
| 27834 | 7,515.00 | 9/25/87 | 12/11/87 (ck. 24821) |
| 27835 | 4,512.00 | 9/25/87 | 12/11/87 (ck. 24821) |

5. Richard N. First, the Debtor's former Controller, credibly testified that he believed that checks number 24819, 24820, and 24821 were issued by the Debtor on October 7, 1987, rather than on the respective invoice dates, because the checks before and after those numbers in the Debtor's check registry were written on that date. We find that the checks were in fact written by the Debtor on October 7, 1987.

6. Between September 16, 1987, and October 27, 1987, the Defendant delivered additional goods to the Debtor valued at a total of $82,348.50, for which the Defendant has never been paid.

7. Vincent Anello, the Defendant's President, credibly testified that he had been demanding checks post-dated about sixty days after shipment in payment of invoices from the Debtor for over a year prior to fall of 1987 because his factor would not allow the Defendant to give credit to the Debtor due to its slow payment record.

8. Anello further stated that he felt as secure in receiving post-dated checks from the Debtor as he would have in receiving cash from it because he believed that a drawer's failure to make checks good would constitute a federal crime. It was because of this misplaced security which he felt from receiving post-dated checks that Anello agreed to make the September 16, 1987, and October 27, 1987, shipments to the Debtor. We question the credibility of Anello on this point, as we believe it unlikely that a sophisticated businessman such as he would have such serious misconceptions about the ramifications of passing a bad check.

9. There was no testimony that First or anyone associated with the Debtor shared similar misconceptions about the severity of the consequences of the failure to make post-dated checks good.

10. First also testified that the Debtor's Petition and Schedules, listing assets of $2,507,650 and liabilities of $3,599,839, was accurate, and reflected the Debtor's financial picture throughout the 90–day pre-filing preference period.

B. CONCLUSIONS OF LAW

1. All of the elements of 11 U.S.C. § 547(b) were established to be present. The transfers were for the benefit of the Defendant on account of debts which were at least to some degree antecedent. The presumption of the Debtor's insolvency at the time of the transfers, *see* 11 U.S.C. § 547(f), was not overcome. The payments were made within 90 days of the bankruptcy filing. The Defendant stipulated that the element of § 547(b)(5) was present, *i.e.*, that the Defendant received more in the payments in issue than it would have received in a Chapter 7 liquidation of the Debtor.

2. The affirmative defenses advanced by the Defendant were based solely upon 11 U.S.C. § 547(c)(1) and 547(c)(4).[2]

2. The text of these Code provisions is as follows:

(c) The trustee may not avoid under this sec-

3. The Defendant's § 547(c)(4) defense cannot be sustained.

■ In *In re New York City Shoes, Inc.*, 880 F.2d 679 (3d Cir.1989) (hereinafter "*NYC Shoes*"), the Court of Appeals considered the validity of a § 547(c)(4) defense in the context of a transaction in which a debtor gave a post-dated check for payment. In that matter, this court had found that the defendant had treated a post-dated check like a cash payment, causing it to make subsequent deliveries of merchandise on credit to the debtor solely because it had received a post-dated check from the debtor in payment of certain prior debts. Nevertheless, in *NYC Shoes*, the Court of Appeals reversed the decision of this court and an affirmance by the district court in favor of the defendant and held that the transfer reflected by the post-dated check could be avoided as preferential.

Central to the result of *NYC Shoes* was the Court's conclusion that a payment by a post-dated check cannot not generally be considered as the equivalent of a cash payment. 880 F.2d at 683–84. Therefore, it determined that "payment" via the debtor's post-dated check did not occur on the date of the check's delivery, 880 F.2d at 683–84, as in the case of a contemporaneously-dated check, *see In re American International Airways, Inc.*, 68 B.R. 326, 336 (Bankr. E.D.Pa.1986), *aff'd*, C.A. No. 87–1287, 1987 WL 54484 (E.D.Pa. May 12, 1987). The Court stated that "postdating checks is not business as usual," 880 F.2d at 683, and that a post-dated check could be considered like a cash payment only if (1) the check were merely slightly post-dated, (2) the insolvency of the debtor were patent, or (3) the parties explicitly treated the transaction like a cash transaction. *Id.* at 684.

None of these elements are present here. The check was dated over forty-five days

(45) after it was given to the Defendant in payment. It was therefore not "slightly" post-dated; the gap between its delivery and its date was greater than the check in issue in *NYC Shoes*. The reluctance of the Defendant's factor to allow the Debtor to purchase from the Defendant on credit indicated a justified lack of confidence in the Debtor's solvency. Hence the Debtor's solvency was not patent. There is evidence that the Defendant treated the transaction as if it were a cash deal because of its misconceptions regarding the consequences of negotiating a dishonored check. However, there was no evidence that these misconceptions extended to the Debtor, which, as we have learned from other proceedings in its series of preference actions, presented numerous checks to its suppliers which it failed to pay.

The Defendant argues that a decision in its favor would further the policy underlying § 547(c)(4), *i.e.*, encouraging trade creditors to continue providing credit to troubled businesses. *See, e.g.*, *NYC Shoes*, 880 F.2d at 680; and *AIA, supra*, 68 B.R. 335. However, despite our own reservations as to whether the *NYC Shoes* decision properly serves this policy, we are bound to follow it and, on its authority, we are obliged to reject the Defendant's § 547(c)(4) defense.

4. The Defendant's § 547(c)(1) defense fails as well.

■ Alternatively, the Defendant argues that the payments of November 24, 1987, and December 11, 1987, were not preferential pursuant to § 547(c)(1) because the transfers of the checks in issue, which we found were in fact drawn and transferred on October 7, 1987, were "contemporaneous exchanges" for the goods invoiced be-

tion a transfer—
(1) to the extent that such transfer was—
  (A) intended by the debtor and the creditor to or for whose benefit such a transfer was made to be a contemporaneous exchange for new value given to the debtor; and
  (B) in fact a substantially contemporaneous exchange; ...
....

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
  (A) not secured by an otherwise unavoidable security interest; and
  (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor; ...

tween September 18, 1987, and September 25, 1987.

Admittedly *NYC Shoes* does not directly control this issue, because the defendant there did not invoke § 547(c)(1) as a defense.[3] This provision, although intended to render transfers in which payment is made by contemporaneously-dated checks non-preferential, S.REP. NO. 95–989, 95th Cong., 2nd Sess. 88 (1978); and H.R.REP. NO. 95–595, 95th Cong., 1st Sess. 373–74 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5874, 6329–30, would not appear to be applicable to a transfer in which payment was made by a post-dated check. Section 547(c)(1) applies only to cash or quasi-cash transactions, *Kallen v. Litas*, 47 B.R. 977, 983 (N.D.Ill.1985); and *Family Home Centers, supra*, 65 B.R. at 177. "A creditor who receives a post-dated check cannot treat it as a cash payment." *In re Johnson*, 25 B.R. 889, 897 (Bankr.E.D. Tenn.1982).

We note that § 547(c)(1) requires that *both* parties must intend that the transfer be a contemporaneous exchange for new value *and* that the transaction is "in fact a substantially contemporaneous exchange" (emphasis added). 11 U.S.C. § 547(c)(1)(B). These requirements are in the conjunctive. *See Kallen, supra*, 47 B.R. at 983; *In re Lyon*, 35 B.R. 759, 761–62 (Bankr.D.Kan. 1982); and 4 COLLIER ON BANKRUPTCY, ¶ 547.07, at 547–41, 547–42, 547–43 (15th ed. 1989).

Although the Defendant may have proven that *it* considered the transactions contemporaneous due to Anello's misconceptions about the security of payment engendered by the acceptance of a post-dated check in payment, a "fact" about which we have some doubt, it has clearly not proven the other prerequisite elements of § 547(c)(1), *i.e.*, (1) that the *Debtor* intended the exchanges to be contemporaneous, and (2) that the exchanges were *in fact* substantially contemporaneous. There is no evidence of the Debtor's intentions. The Court of Appeals has stated in *NYC Shoes*, apparently as a matter of law, that "post-dating checks is not business as usual." 880 F.2d at 683. *Accord, Johnson, supra*, 25 B.R. 897 (addressing a § 547(c)(1) defense). This statement suggests that, at least as to payments by checks post-dated as substantially as 45 days, like the instant checks, the transfers cannot be considered as given in a substantially contemporaneous exchange for the goods shipped, per 11 U.S.C. § 547(c)(1)(B).

Furthermore, we credit First's testimony establishing that the checks were not drawn until October 7, 1987, and hence could not have been transferred until that date. We question whether the transfer of any checks, even checks contemporaneously-dated, as much as two weeks after invoice and delivery of the goods for which the checks are given in payment, are "in fact ... substantially contemporaneous exchange[s]." *Id.*

Therefore, we conclude that the Defendant's § 547(c)(1) defense, like its § 547(c)(4) defense, must fail.

■ 5. Having rejected the validity of the only defenses, we conclude that the Debtor is entitled to judgment for the amount of the transfers in issue. Furthermore, there being no circumstances justifying denial of same, the Debtor is also entitled to interest measured from no later than the date of the filing of this proceeding. *See In re Southern Industrial Banking Corp.*, 88 B.R. 174 (Bankr.E.D.Tenn. 1988); and *In re Art Shirt, Ltd.*, 68 B.R. 316, 325 (Bankr.E.D.Pa.1986), *aff'd*, 93 B.R. 333 (E.D.Pa.1988).

## C. ORDER

AND NOW, this 9th day of January, 1990, after trial of this proceeding on De-

---

**3.** As the defendant accurately points out, such a defense would have been inconceivable under the facts there, because the shipments on account of which the pertinent post-dated check was issued predated the issuance of the check by several months, 880 F.2d at 680, which is not the case here. The invocation of this defense here hence survives the requirement that "contemporaneous exchange" payment must be made for present rather than past debts. *See In re Standard Food Services, Inc.*, 723 F.2d 820, 821 (11th Cir.1984); and *In re Family Home Centers, Inc.*, 65 B.R. 176, 177 (Bankr.N.D.Ga. 1986).

cember 6, 1989, and upon consideration of the parties' post-trial Briefs, judgment is entered in favor of the Debtor and Plaintiff, SAMAR FASHIONS, INC., and against the Defendant, MATISSE INTERNATIONAL, INC., in the amount of $61,240.00, plus interest at six (6%) percent per annum from August 18, 1989, to this date that judgment is entered, and costs of suit. Interest pursuant to 28 U.S.C. § 1961 shall be imposed on the total sum of the judgment subsequent to this date.