**In re EQUIPMENT COMPANY OF AMERICA, a Florida Corporation, Debtor.**

**EQUIPMENT COMPANY OF AMERICA, a Florida Corporation, Plaintiff,**

**v.**

**PRODUCTION SUPPLY COMPANY OF FLORIDA, INC., Defendant.**

**Bankruptcy No. 91–10840–BKC–SMW. Adv. No. 91–0751–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 30, 1991.

**170**

Thomas L. Abrams, Miami, Fla., for plaintiff and debtor.

Robert C. Meyer, Coral Gables, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE having come before the Court upon the complaint of Equipment Company of America (the "debtor") against Production Supply Company of America, Inc. (the "creditor") to avoid as preferential transfers a series of payments made with postdated checks pursuant to 11 U.S.C. § 547(b), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1334(b) and § 157(a, b) and the district court's general order of reference. This is a core proceeding in which this Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(F).

The creditor is a distributor of ferrous and non-ferrous metallic goods who, beginning in April, 1990 and continuing through February, 1991, supplied materials to the debtor. The parties agreed that payment for each of the purchase orders submitted to the creditor by the debtor would be made by sixty (60) day postdated check tendered to the creditor upon delivery of the goods, or mailed to the creditor shortly thereafter. This method of payment was proposed by the debtor who had a similar arrangement with certain other creditors, and a small percentage of the creditor's business affairs also included transactions involving payment by postdated checks.

On February 26, 1991, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The debtor then instituted this adversary proceeding seeking to recover as voidable preferences, fifteen payments made by the debtor to the creditor within the ninety (90) days preceding the filing of the Chapter 11 petition, totaling $59,206.40. Each of the payments was made by the debtor's delivery of a sixty (60) day postdated check. The first of the fifteen payments was made by check dated November 28, 1990, and the last payment was made by check dated February 14, 1991.

The creditor has raised two alternative defenses asserting that the transfers may not be avoided. Firstly, the creditor claims that the payments were not preferences in that the payments were contemporaneous exchanges as defined in 11 U.S.C. § 547(c)(1). Alternatively, the creditor con-

tends that the payments were within the ordinary course of business as defined in 11 U.S.C. § 547(c)(2). Section 547 of the Bankruptcy Code provides, in relevant part, as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c).

■ The first issue before the Court is whether the debtor's payment, either upon delivery of the goods or shortly thereafter, by a sixty (60) day postdated check is a contemporaneous exchange for new value as defined in 11 U.S.C. § 547(c)(1).

For purposes of preferential transfers, this Court has previously determined, following the majority rule, that payment by check is effective on the date the check is honored and not the date the check is delivered. *In re Sunup/Sundown, Inc.,* 65 B.R. 696, 697 (Bankr.S.D.Fla.1986); *see also, In re Quality Holstein Leasing Inc.,* 46 B.R. 70 (Bankr.N.D.Tex.1985); *In re Naudain, Inc.,* 32 B.R. 875 (Bankr.E.D.Pa. 1983). Nonetheless, the creditor claims that payment by postdated check is a contemporaneous exchange for the purposes of the exception under 11 U.S.C. § 547(c)(1) and therefore cannot be avoided by the debtor. In support of its claim, the creditor cites the case of *In re White River Corporation,* 799 F.2d 631 (10th Cir.1986), wherein the court held that a transfer occurs upon delivery of the check, rather than on the date the check is honored by the drawee bank. *In re White River Corporation,* 799 F.2d at 633; *See also In re Virginia Information Systems Corporation,* 932 F.2d 338 (4th Cir.1991). The court in *White River* was persuaded by the congressional history of 11 U.S.C. § 547(c)(1) which indicates that Congress intended that payment by check is assumed to be intended to be contemporaneous and is, therefore, equivalent to a cash payment.

Postdated checks are by their very nature not intended to be contemporaneous, nor do they vest control over the timing of payment in the payee until that date in the future that the check is dated. Until that date, a postdated check is just a promise to pay in the future. The court in *White River* was concerned with preserving the customary view of payment by check, which is that the check represents an intent to pay contemporaneously with the delivery of the check; however, the *White River* court was not dealing with postdated checks. The court also stated that its "holding that the transfer occurs on the date the check is delivered allows the debtor, as opposed to the bank, to determine the precise date of transfer." *In re White River Corporation,* 799 F.2d at 634.

The checks in this case were postdated which, while not unusual, certainly is not customary and does not evidence an intent to pay contemporaneously with the delivery of the check. A check sent to a creditor by a debtor customarily bears a date which is the same as the day on which it was written. The checks before this Court were postdated sixty (60) days after the date the debtor incurred the debts that the checks were written for. The debtor wanted to pay in sixty (60) days and not contemporaneously with the delivery of the goods. In so doing, the debtor clearly intended to control the timing of the payment which the court in *White River* deferred to. Therefore, the effective date of transfer cannot be the date the check was delivered to the creditor.

This conclusion is in accord with the holding in *In re New York City Shoes, Inc.,*

880 F.2d 679 (3rd Cir.1989), that there is a rebuttable presumption that postdated checks are transferred "either on the date on the face of the check, or on the date that the check clears the bank, as opposed to the date on which the check was delivered." *In re New York City Shoes, Inc.,* 880 F.2d at 679. That presumption may be rebutted in "cases in which a check is so slightly postdated, the solvency of the debtor is so patent or widely believed, or the intent of the parties is so explicit, that it becomes clear that the parties were treating the postdated check as cash." *In re New York City Shoes, Inc.,* 880 F.2d at 684. The creditor did not rebut this presumption. The checks presented to the creditor were postdated sixty (60) days, not slightly postdated. Additionally, the record does not indicate the obvious solvency of the debtor, or the intent of the parties to treat the checks like cash.

Since this Court deems that payment by check is effective on the date the check is honored, this Court holds that payment by sixty (60) day postdated check is not a contemporaneous exchange as defined under 11 U.S.C. § 547(c)(1).

Having concluded that payment by a sixty (60) day postdated check cannot be a contemporaneous exchange, the Court must next consider whether payments by use of sixty (60) day postdated checks come within the ordinary course of business exception recited in 11 U.S.C. § 547(c)(2). In order for a payment, made by the debtor within the ninety (90) day preference period, to come under the ordinary course of business exception of § 547(c)(2), it must satisfy the three conditions set out by § 547(c)(2)(A) through (C). Consideration of whether or not the payments satisfy the conditions, will be done in light of the Court's desire to leave the parties' normal financial relations undisturbed. *In re Sunup/Sundown, Inc.,* 66 B.R. 1021, 1022 (Bankr.S.D.Fla.1986).

The first and second conditions, phrased in the context of this case, are first, whether the debt was incurred in the ordinary course of business between the parties, and second, whether the payments by the debtor during the preference period were made in the ordinary course of business between the parties. The subject transactions were shown to be normal in size and frequency. Therefore, the creditor has satisfied the first condition.

In satisfying the second condition, the creditor showed that the payments were made by sixty (60) day postdated check in accordance with the established course of business that the debtor and the creditor had agreed to. The creditor demonstrated that the fifteen (15) payments were made according to the ordinary course of business of the parties, and that there was nothing unusual in the transactions. The postdated checks were received by the creditor within thirty (30) days after delivery of the goods. The checks were all drawn from the debtor's operating account. The creditor would then cash the checks according to the date on the checks which was always sixty (60) days after the date of receipt of the goods. Therefore, the manner of payment was not at variance with the parties' prior course of dealing. Furthermore, there was no significant deviation in the parties' course of business during the period in question. The orders and deliveries continued in roughly the same amount and frequency, and there was no change in the timing of payment.

The third condition is satisfied if it is shown that the payments were made according to the ordinary business terms between the parties. The parties had agreed that the ordinary business terms between them would be payment upon delivery or payment by postdated check. The creditor has shown that the payments in question were made by postdated check in accordance with their agreement.

The debtor, citing to *In re Southern Commodity Corp.,* 78 B.R. 626 (Bankr. S.D.Fla.1987), contends that the third condition can be satisfied only if the payments conform to the ordinary business terms of the industry, not those between the parties. However, there are several important differences which distinguish the *Southern Commodity* case from the case at bar. In *Southern Commodity,* the court was par-

ticularly concerned with the changes in the parties' course of dealing that took place at the time of payment. In that case, the challenged payments did not conform to the prior course of dealing between the parties. The court noted the lateness of the payments, and the fact that the challenged payments were made after deliveries had ceased. None of these events occurred in the case at bar.

█ In *Southern Commodity*, the court required that payments be made according to terms ordinary in the industry. However, reading 11 U.S.C. § 547(c)(2)(C) as requiring compliance with terms ordinary in the industry would negate any benefit the exception would convey. That reading would require that the parties conduct themselves according to business norms, restricting their chosen course of dealing to an industry standard. The exception was created to allow debtors and creditors to continue in their normal course of business, and "discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir.1986). To hold otherwise would be to place the exception out of reach of all those debtors and creditors for whom it was written.

In *In re Jerry–Sue Fashions, Inc.*, 91 B.R. 1006 (Bankr.S.D.Fla.1988), this Court was concerned with preserving the course of business established between the parties and with not shielding variations of that way of doing business, when it addressed what is meant by "ordinary business terms". In *Jerry–Sue*, the payment terms on the invoices required payment by the debtor within thirty days of the date of the invoice as was standard in the industry. This court found that four payments made by a debtor from forty-nine (49) to seventy-four (74) days after the indebtedness was incurred by the debtor were not late payments "when viewed in the context of the party's prior course of dealing...." *In re Jerry–Sue Fashions, Inc.*, 91 B.R. at 1008. The prior course of dealing this Court recognized was simply an observation that the debtor had been allowed to significantly exceed the thirty (30) day payment terms contained on the invoices. This conclusion is in accord with policy interest in encouraging creditors to "continue short term credit dealings with troubled debtors in order to forestall bankruptcy rather than encourage it." *In re Morris*, 53 B.R. 190, 192 (Bankr.Or.1985).

In this case, however, the payments need not be viewed in terms of the parties' prior course of dealing inasmuch as there was an explicit agreement that payment would be made by the debtor by use of sixty (60) day postdated checks, and that these checks would be accepted by the creditor. The Court in *Jerry–Sue* also looked at whether the payments resulted from "unusual" debt collection practices. The Court stated:

"[U]nusual debt collection practices not insulated by 11 U.S.C. § 547(c)(2), include changes in the method of payment by the debtor to the creditor (for example, a change from payments made by check to payments made by cashier's check or cash), payments made after the debtor has ceased all or a portion of its business operations and payments which are late, relative to the parties prior course of dealing."

*In re Jerry–Sue Fashions, Inc.*, 91 B.R. at 1008. At bar, there was no change in the method of payment, nor were the payments late or made after the debtor had ceased all or a portion of its business operations.

Accordingly, this Court holds that the ordinary course of business exception under 11 U.S.C. § 547(c)(2) defines the term "ordinary course of business" in the context of the business practices between the debtor and the creditor.

Based on the foregoing, this Court finds that the fifteen payments totalling $59,-206.40 the debtor paid to the creditor were made according to the agreed ordinary business terms of the parties, and come within the ordinary course of business exception under 11 U.S.C. § 547(c)(2) and thus cannot be avoided as preferential transfers.

The Court shall enter a separate Final Judgment consistent with the findings herein.