File Name: 05a0818n.06
Filed: October 6, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| In re PRO PAGE PARTNERS, LLC, Debtor | ) |
| ------------------------------------------------------- | ) |
| MARY FOIL RUSSELL, Trustee, | ) |
| | ) |
|   Plaintiff-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
|     v. | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF TENNESSEE |
| CARLETON A. JONES, III, | ) |
| | ) |
|   Defendant-Appellee. | ) |

Before:     **NELSON** and **SUTTON**, Circuit Judges, and **ZATKOFF**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  The question presented in this bankruptcy appeal is whether money advanced by the defendant to the debtor constitutes "new value" that can be offset against the defendant's liability for avoidable transfers previously received by the defendant from the debtor.  The bankruptcy court held that regardless of whether the advances in question constituted loans, as contended by the defendant, or contributions to capital, as contended by the trustee in bankruptcy, the advances came within the statutory definition of "new value" and could thus support a new-value defense.  The district court agreed.  So do we.  The challenged judgment will be affirmed.

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

I

Pro Page Partners, LLC, a provider of paging and wireless communications services, filed a petition under Chapter 11 of the Bankruptcy Code. The case was later converted to a Chapter 7 proceeding, and Mary Foil Russell was appointed trustee in bankruptcy.

Prior to the conversion, Pro Page sued Carleton A. Jones, III — who was both a creditor of Pro Page and the holder of a 30 percent equity interest in the company — seeking recovery of the value of certain transfers made by Pro Page to or for the benefit of Mr. Jones during the year preceding its bankruptcy filing. Upon conversion of the case to a Chapter 7 proceeding, the trustee was substituted for Pro Page as the party plaintiff.

In his answer to the complaint, Mr. Jones alleged that he had made loans totaling $140,500 to Pro Page on designated dates during the year before the bankruptcy filing. Jones claimed that the loans constituted "new value" that should be offset against the amount of any transfers found to be avoidable.

It is undisputed that Mr. Jones had advanced some of the money directly to Pro Page and had paid taxes on Pro Page's behalf with the balance. Although there is no dispute as to the amounts and dates of these advances and tax payments, there is a dispute as to whether they were really loans. On the one hand, Pro Page did not execute a written credit agreement or issue promissory notes for the funds. On the other hand, the understanding was that the company would repay the money when it could. In keeping with that understanding, the

company booked the advances (a term that we shall use to include the tax payments) as "loans."

The parties filed cross-motions for partial summary judgment on Mr. Jones' "new value" defense. The bankruptcy court denied the trustee's motion and granted Mr. Jones' motion in part, holding that "[r]egardless of whether [Jones'] monetary advances were loans, charitable contributions or even gifts, they replenished the debtor's bankruptcy estate and thus constitute new value within the meaning of [11 U.S.C.] § 547(a)(2)." The court withheld judgment as to whether other elements of the "new value" defense were satisfied, and the case proceeded to trial.

After trial, the bankruptcy court held that the transfers made by Pro Page to or for the benefit of Mr. Jones were avoidable but that Jones was entitled to the new-value defense under 11 U.S.C. § 547(c)(4). Reducing the amount of the avoidable transfers by the amount of the new value subsequently advanced by Jones, the court awarded the trustee a little more than $10,000, plus interest.

The trustee appealed to the district court. That court affirmed, and the trustee filed a timely appeal to our court.

II

Section 547(b) of the Bankruptcy Code allows a trustee to avoid certain transfers made by the debtor to a creditor within 90 days — or, if the creditor is (like Mr. Jones) an

No. 04-5804
Page 4

insider, within one year — before the filing of the debtor's bankruptcy petition. See 11

U.S.C. § 547(b). Under § 547(c)(4), however, the trustee may not avoid a transfer

> "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
>> (A) not secured by an otherwise unavoidable security interest; and
>>
>> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." *Id.* § 547(c)(4).

Subject to an exception not relevant in the case at bar, "new value" is defined to include

"money or money's worth in goods, services, or new credit . . . ." *Id.* § 547(a)(2).

The advances in question here — advances that took the form of checks drawn on Mr.

Jones' account and made payable to the order of Pro Page or the Tennessee Department of

Revenue — obviously constituted "money" within the "new value" definition of 11 U.S.C.

§ 547(a)(2). The trustee suggests that, under § 547(a)(2), money must be in the form of

"goods, services, or new credit." As we read the statute, however, the phrase "in goods,

services, or new credit" modifies only "money's worth;" the phrase does not modify both

"money's worth" and "money."

It would have been strange indeed for Congress to have defined new value as meaning

"[1] money [in goods, services, or new credit] or [2] money's worth in goods, services or

new credit." If "money in goods, services, or new credit" could have any meaning at all, it

would have to mean the same thing as "money's worth in goods, services, or new credit" —

in which case there would have been no point in speaking of both money and money's worth. One term or the other would have been superfluous — and it is an accepted canon of statutory construction that Congress should be presumed not to have used superfluous words. See *Platt v. Union Pacific R. Co.*, 99 U.S. 48, 58 (1878).

"Money," then, stands unmodified in the statutory definition of "new value." If Mr. Jones gave Pro Page money, as he did, it does not matter whether there was or was not an enforceable credit agreement. It does not matter whether the advances were truly loans rather than, as the trustee contends, capital contributions. Money is money whether it is to be paid back or not.

As to the remaining elements of the "new value" defense, the trustee does not suggest that Mr. Jones' payments to Pro Page were "secured by an otherwise unavoidable security interest." (See 11 U.S.C. § 547(c)(4)(A).) The trustee focuses instead on § 547(c)(4)(B), arguing that Mr. Jones failed to prove that Pro Page "did not make an otherwise unavoidable transfer" to Jones "on account of" Jones' payments.

Again we are not persuaded. Except for the transfers which the trustee asserted — and the bankruptcy court held — were avoidable, Mr. Jones testified that he was aware of no transfers made by Pro Page to him or for his benefit during the year preceding the bankruptcy filing. There being no evidence that any such transfers were made, we think this testimony was sufficient to satisfy § 547(c)(4)(B). (We observe, in this connection, that the

trustee has presented no legal authority supporting her contention that an insider bears a heightened burden of proof with respect to the § 547(c)(4) defense.)

We do not think it can be successfully argued that a part-owner's contributions to capital flunk the test of § 547(c)(4)(B) on the ground that any such contribution increases the part-owner's percentage share in the enterprise and any such increase represents "an otherwise unavoidable transfer . . . ."  For one thing, the initial premise is wrong; capital contributions do not increase the contributor's share of the pie, and we have no reason to suppose that Mr. Jones' 30 percent interest in Pro Page was increased by reason of the cash advances at issue here.

The trustee insists that application of the "new value" defense in the circumstances of this case is contrary to the logic and purpose of § 547(c)(4).  It does not seem so to us.  Section 547(b) makes preferential transfers avoidable because they unfairly diminish the bankruptcy estate.  See *Matter of Kroh Brothers Development Co.*, 930 F.2d 648, 652 (8th Cir. 1991).  Insofar as the recipient of a preferential transfer gives new value that is not paid for by the debtor, the bankruptcy estate is re-enhanced.  The estate, in other words, is restored pro tanto to the status quo ante; to the extent of the new value, the estate is not diminished at all.  See *id.*  Recognizing this fact, § 547(c)(4) requires transfers between the debtor and a creditor to be "netted out."  *In re Fulghum Construction Corp.*, 706 F.2d 171, 173-74 (6th Cir.) (quoting H.R. Rep. No. 95-595, at 374, *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6330), *cert. denied*, 464 U.S. 935 (1983).

In the case at bar, the application of § 547(c)(4) accomplishes exactly what the statute is meant to accomplish. "Netting out" Pro Page's transfers to Mr. Jones and Jones' payments to Pro Page limits Jones' liability to the amount by which the bankruptcy estate actually was diminished. Contrary to the trustee's argument, subsections (A) and (B) of § 547(c)(4) are not thereby rendered "a legal nullity." Subsections (A) and (B) are designed to insure that the "new value" given by the creditor truly replenishes the bankruptcy estate, and the advances made by Mr. Jones did just that.

It is true that the statutory qualification in § 547(c)(4)(A) — the qualification that the "new value" must "not [be] secured by an otherwise unavoidable security interest" — probably has relevance only where the new value takes the form of a loan to the debtor. But subsection (A) is not rendered a "legal nullity," to use the trustee's term, if new value can include loans but is not limited to them. The fact that Congress has said secured loans cannot constitute new value hardly means that unsecured loans are the only allowable form of new value.

The trustee's final argument is that voidable transfers made by Pro Page to People's Community Bank, a creditor of Jones but not of Pro Page, are not subject to the "new value" defense in any event. The trustee's theory is that application of the defense would give Mr. Jones a "double credit" to the extent that his payments to Pro Page were used to offset transfers made by Pro Page to the Bank. We confess to some difficulty in understanding this theory. A "double credit" or "double benefit" results if a creditor is permitted to avail

himself of the "new value" defense even though the debtor repaid the new value by an otherwise unavoidable transfer. See *In re IFRM, Inc.*, 52 F.3d 228, 231-32 (9th Cir. 1995). As we have seen, there was no such repayment by the debtor here.

Like the courts below, we conclude that the advances made by Mr. Jones constituted new value that was properly offset against the avoidable transfers previously made by Pro Page. The challenged judgment is **AFFIRMED**.