**In re PILLOWTEX CORPORATION, et al., Debtors.**

**John Wahoski, as Liquidating Trustee of Pillowtex Corporation, Plaintiff**

v.

**American & Efrid, Inc., Defendant.**

**John Wahoski, as Liquidating Trustee of Pillowtex Corporation, Plaintiff**

v.

**Xymid, LLC, Defendant.**

**Bankruptcy No. 03–12339(PJW).**
**Adversary Nos. 05–52131(KJC), 05–30238(KJC).**

United States Bankruptcy Court, D. Delaware.

Oct. 15, 2009.

---

Andrew R. Remming, William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, DE, Gilbert R. Saydah, Jr., Kelley Drye & Warren LLP, New York, NY, for Plaintiff.

Bradford J. Sandler, Benesch Friedlander Coplan & Aronoff, Christina Maycen Thompson, Jeffrey C. Wisler, Marc J. Phillips, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, for Defendants.

## MEMORANDUM [1]

KEVIN J. CAREY, Bankruptcy Judge.

Pillowtex Corporation and related entities (the "Debtors" or "Pillowtex") filed voluntary chapter 11 bankruptcy petitions on July 30, 2003. The Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed a Joint Plan of Liquidation (the "Plan"), which was confirmed by Order dated February 13, 2007, and the Plan became effective on June 29, 2007.

During the pending chapter 11 case, the Committee filed a number of adversary proceedings seeking to avoid preferential and fraudulent transfers. The confirmed Plan established a Liquidating Trust and provided for the vesting of the right to continue the adversary proceedings in the Liquidating Trust upon the effective date of confirmation. The parties in the adversaries signed stipulations agreeing to substitute "John Wahoski, as Liquidating Trustee of Pillowtex Corporation" as plaintiff, in the place of the Committee.

---

**1.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(F).

Currently before me are separate motions for partial summary judgment filed by the defendants in the adversary proceedings against American & Efrid, Inc. ("A & E") and XYMID, LLC ("Xymid"). I will consider the motions together because both raise the same issue: whether a defendant in a preference suit may rely on the subsequent new value defense provided by Bankruptcy Code § 547(c)(4) if the debtor has paid the defendant for the new value. For the reasons set forth below, I conclude that the Debtors' payment for subsequent new value deprives the Defendants of the § 547(c)(4) defense only if the payment is unavoidable.

## BACKGROUND

*American & Efrid, Inc. (Adv. No. 05–52131).*

On July 27, 2005, the Committee filed an adversary complaint against A & E alleging (among other things) that transfers totaling $326,295.90 made by the Debtors to A & E within 90 days prior to the bankruptcy filing should be avoided as preferential transfers under Bankruptcy Code § 547. A & E filed an answer to the complaint asserting various defenses, including the affirmative defense of subsequent new value under Bankruptcy Code § 547(c)(4) based upon A & E's continued shipment of products to the Debtors during the preference period.

On June 30, 2006, A & E filed a motion for partial summary judgment on the issue of the § 547(c)(4) subsequent new value defense (docket nos. 38 & 39). In response, the plaintiff filed two procedural motions which were resolved at a hearing on April 11, 2008.[2] As a result of that hearing, discovery was reopened for the limited purpose of deposing certain individuals.

Thereafter, the Trustee and A & E filed a Joint Stipulation, (docket no. 92), which asks this Court to decide the legal issue related to the subsequent new value defense set forth in Bankruptcy Code § 547(c)(4). The parties have agreed that A & E will pay a settlement amount, which changes depending on the Court's decision on the new value defense legal issue. The parties ask the Court to consider previously filed briefs regarding A & E's motion for partial summary judgment; specifically, (i) A & E's memorandum of law in support on its motion for partial summary judgment filed on June 30, 2006 (docket no. 39); (ii) the Trustee's memorandum of law in opposition filed on July 14, 2006 (docket no. 40); and (iii) A & E's reply memorandum of law filed on July 27, 2006 (docket no. 49).

*XYMID, LLC (Adv. No. 05–30238).*

On November 30, 2005, the Committee filed an adversary complaint against Xymid alleging (among other things) that transfers totaling more than $1,571,814.00 made by the Debtors to Xymid within 90 days prior to the bankruptcy filing should be avoided as preferential transfers under Bankruptcy Code § 547. Xymid filed an answer to the complaint asserting various defenses, including the affirmative defense of subsequent new value under Bankruptcy Code § 547(c)(4) based upon Xymid's continued shipment of goods to the Debtors through the preference period.

On July 12, 2006, Xymid filed a motion for partial summary judgment, along with a memorandum of law in support thereof (docket no. 75). On July 26, 2006, the Trustee filed a memorandum of law in

---

2. The procedural motions were the plaintiff's "Motion to Strike Defendant's Summary Judgment Reply Papers" (docket no. 50) and A & E's motion to continue trial, reopen discovery, and allow the filing of sur-reply and sur-sur-reply briefs (docket no. 51).

opposition to the motion (docket no. 77), and on August 2, 2006, Xymid filed a reply memorandum (docket no. 79). The parties also have outstanding discovery motions, which they agreed to adjourn pending a decision on the new value legal issue.

Given the discreet legal issue presented and absent a dispute about the material facts for this purpose, there is no need to discuss the facts of either adversary proceeding in any detail.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr.P. 7056. In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

### DISCUSSION

A trustee may avoid transfers made by a debtor prior to the bankruptcy filing if the elements of Bankruptcy Code § 547(b) are met. 11 U.S.C. § 547. However, Congress chose to exclude certain transfers from avoidance by providing the defenses set forth in § 547(c). The "subsequent new value" defense is set forth in § 547(c)(4) as follows:

(c) The trustee may not avoid under this section a transfer—

. . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4).

There is a recognized split in the Courts of Appeals in how the various courts interpret and apply § 547(c)(4)(B), which has been described as follows:

Of the seven Circuits that have dealt with this provision of the Code, three (the Third, Seventh, and Eleventh) have concluded that § 547(c)(4)(B) should be

read to mean that new value *must remain unpaid* at the end of the preference period in order to be effectively used by the creditor to offset his preference liability.... Conversely, three Circuits (the Fourth, Fifth, and Ninth) have determined that § 547(c)(4)(B) does not mandate a "remains unpaid" requirement, and that rather, the statute must be interpreted in accordance with its plain—albeit complex—meaning. This method of interpretation has been dubbed the "subsequent advance" approach, and is both the emerging and more doctrinally sophisticated view. The issue is seemingly unresolved in the Eighth Circuit, where the Court has come down with conflicting opinions at once acknowledging the doctrinal advantages of the "subsequent advance" approach, while upholding results it reached employing the "remains unpaid" approach.

Noah Falk, *Section 547(c)(4): The Subsequent New Value Exception Defense To Preferences,* 2004 Ann. Surv. Of Bankr. Law Part I, § Q (Norton October 2004).[3] In *Maxwell Newspapers,* the Court recognized that "most of the courts that are cited as requiring that subsequent new value be 'unpaid,' have not actually held as much, but, ... have only repeated that requirement in *dicta.* This explains those courts' employment of the term 'unpaid' not as a statement of law, but rather as a 'shorthand requirement of § 547(c)(4)(B).' " *Official Committee of Unsecured Creditors of Maxwell Newspapers, Inc. v. Travelers Indemnity Co. (In re Maxwell Newspapers, Inc.),* 192 B.R. 633, 639–40 (Bankr.S.D.N.Y.1996) (citations omitted).[4]

In *New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.),* 880 F.2d 679 (3d Cir.1989), the Third Circuit Court of Appeals wrote:

> The three requirements of section 547(c)(4) are well established. First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the creditor for the "new value" as of the date that it filed its bankruptcy petition. *See In re Al-*

**3.** The Courts of Appeals decisions referenced in Falk's summary are as follows: *New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.),* 880 F.2d 679 (3d Cir.1989), *Matter of Prescott,* 805 F.2d 719 (7th Cir.1986); *Charisma Inv. Co., N.V. v. Airport Systems, Inc. (In re Jet Florida System, Inc.),* 841 F.2d 1082 (11th Cir.1988); *Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.),* 902 F.2d 257 (4th Cir.1990); *Laker v. Vallette (Matter of Toyota of Jefferson, Inc.),* 14 F.3d 1088 (5th Cir.1994); *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.),* 52 F.3d 228 (9th Cir.1995); and *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.),* 130 F.3d 323 (8th Cir. 1997). *See also Russell v. Jones (In re Pro Page Partners, LLC),* 151 Fed.Appx. 366, 370 (6th Cir.2005)(concluding that an insider could assert a new value defense to the trus-

tee's preference claim because the debtor had not repaid the new value with an otherwise unavoidable transfer.)

**4.** *See also Toyota of Jefferson,* 14 F.3d at 1093 n. 2 (noting that "[s]ome of our sister circuits have, in dicta, described § 547(c)(4)(B) as requiring the subsequent advance to go 'unpaid,' " ... which is a 'shorthand description' of that section."). *See also Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.),* 412 F.3d 545, 552 (4th Cir.2005) (The Fourth Circuit Court of Appeals affirmed a district court decision which determined that " 'the requirement that the new value remain unpaid is [an] inaccurate and confusing paraphrase' and 'that the proper inquiry is whether the new value has been paid for *by an otherwise unavoidable transfer.*' " (emphasis in original)).

marc Manufacturing, Inc., 62 B.R. 684, 686 (Bankr.N.D.Ill.1986). New York City Shoes, 880 F.2d at 680 (emphasis in original). However, the disputed issue in New York City Shoes concerned only the second element of this test, and required the Court to determine whether a creditor who shipped goods to a debtor after delivery of a postdated check provided new value after receiving the transfer. The Court did not use the term "remains unpaid," but other courts and commentators have sometimes relied upon language used by the Court to place the Third Circuit in the "remains unpaid" camp. Section 547(c)(4)(B) was not an issue before the Court—as the Court specifically noted—because the parties agreed that the debtor never paid the creditor for the shipment of goods.[5] New York City Shoes, 880 F.2d at 681.

More recently, the Third Circuit considered the subsequent new value defense in Schubert v. Lucent Technologies, Inc. (In re Winstar Commc'n., Inc.), 554 F.3d 382 (3d Cir.2009). In Winstar, the Court cited to the three-element test of New York City Shoes, then concluded that the defendant failed to prove that it provided equipment to the debtor as "new value" on an unsecured or undersecured basis. Winstar, 554 F.3d at 403. Again, the Court was not required to consider directly the third element (§ 547(c)(4)(B)) of the subsequent new value defense.

The Trustee argues that Delaware courts have followed the New York City Shoes [so-called "remains unpaid"] test, citing (now Court of Appeals) Judge Jordan's decision Claybrook v. Pizza Hut, Inc. (In re Discovery Zone, Inc.), 2004 WL 2346002 (D.Del. Oct.5, 2004) and Judge

Walrath's decision Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc)., 321 B.R. 388 (Bankr.D.Del. 2005). However, as in New York City Shoes, neither court analyzed the third element of the test, but considered only whether the creditor had provided new value after receipt of a preferential transfer.

In another Delaware decision, Hechinger Investment Co. of Delaware, Inc. v. Universal Forest Products, Inc. (In re Hechinger Investment Co. of Delaware, Inc.), 2004 WL 3113718 (Bankr.D.Del.2004), then-visiting Bankruptcy Judge Lindsey did directly consider and analyze the third element of the subsequent new value defense. In Hechinger, the debtor sought to avoid thirty-four transfers made to the creditor during the preference period, totaling more than $16 million dollars. During that period, the creditor continued to ship wood products to the debtors. One issue raised in the cross-motions for summary judgment before Judge Lindsey was identical to the one at issue here: whether subsequent new value must remain unpaid to support a § 547(c)(4) defense. The debtor argued, and Judge Lindsey seemed to assume, that New York City Shoes adopted the "remains unpaid" approach, but Judge Lindsey said that New York City Shoes could be distinguished on its facts, since it involved only one transfer during the preference period. Instead, Judge Lindsey decided that the facts in the matter then before him were more akin to those in Boyd v. The Water Doctor (In re Check Reporting Services, Inc.), 140 B.R. 425 (Bankr.W.D.Mich.1992), which specifically analyzed the language of Section 547(c)(4)(B) in a case involving a "run-

5.  See McGurl v. Trucking Employees of North Jersey Welfare Fund, Inc., 124 F.3d 471, 484 (3d Cir.1997)(The Court wrote that a party's reliance on a statement in a previous decision was not binding upon the Court because it had not considered the issue on the merits and, therefore, the statement was "merely dictum.").

ning account" or "rolling account" between the debtor and creditor. *Hechinger,* 2004 WL 3113718 at *5. *See Toyota of Jefferson,* 14 F.3d at 1091 (The exception in § 547(c)(4) "obviously applies to revolving credit relationships."). Consequently, Judge Lindsey followed the reasoning of *Check Reporting Services* and employed the subsequent advance approach.

■ The § 547(c)(4)(B) issue is squarely before me and I must examine the plain language of the statute and the policies to be advanced by it. So, what *is* the proper interpretation of the "complicated, but not ambiguous" language of § 547(c)(4)(B)? [6] *Check Reporting,* 140 B.R. at 434. A creditor who raises the § 547(c)(4) defense has the burden of proving that:

(1) new value was extended after the preferential payment sought to be avoided,

(2) the new value is not secured with an otherwise unavoidable security interest; and

(3) the new value has not been repaid *with an otherwise unavoidable transfer.*

*Toyota of Jefferson,* 14 F.3d at 1093 n. 2 (emphasis added).[7]

In his article, quoted earlier, Noah Falk noted that some courts that have adopted the subsequent advance approach to § 547(c)(4)(B) have relied upon Professor Countryman's explanation:

If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, and if these subsequent payments are themselves voidable as preferences (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the earlier voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under section 547, because the goods and services were given C.O.D. rather than on credit, or because the creditor has a defense under section 547(c)(1), (2), or (3). In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

Falk, quoting Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 Vand.L.Rev. 713, 788 (May 1985). Section 547(c)(4)(B) was discussed in *Check Reporting Services:*

[A] creditor should not be able to assert a new value transfer as a defense to a preference if the transfer was paid for by the debtor because the estate was not made whole by the new value transfer. But, . . . by the same token, the trustee should not be able to assert the new

---

**6.** "The use of a double negative [in § 547(c)(4)(B)] . . . is not ambiguous; its meaning may be difficult to ascertain but is not indefinite." *Check Reporting Services,* 140 B.R. at 435.

**7.** To be clear, while I express the elements of the § 547(c)(4) defense somewhat differently than was stated in *New York City Shoes,* I do not consider this formulation to be either materially different or inconsistent with that expressed by the Court, by whose decisions I am certainly bound. But, in the absence of

controlling law on the discreet issue of the proper interpretation of § 547(c)(4)(B) (for the reasons described above), after taking into account the subsequent development of decisional law and other scholarship in the twenty years since *New York City Shoes* was decided, and with the § 547(c)(4)(B) issue squarely before me, I conclude that the so-called "third element" of the subsequent advance defense *should be understood as:* "the new value has not been repaid with an otherwise unavoidable transfer."

value was paid if the trustee is asserting that the paying transaction was in fact a preference which the trustee can avoid. By doing so, the trustee will be able to eliminate the effect of the payment for the new value when he recaptures the preferential transfer.

*Check Reporting Services,* 140 B.R. at 433. *See also Maxwell Newspapers,* 192 B.R. at 639 ("There is no logical reason to distinguish between a creditor that was paid by an avoidable transfer and one that was never paid at all.").

The difference between the "remains unpaid" approach and the "subsequent advance" (or plain language) approach to the defense can be illustrated in the following hypothetical example:

| Date | Alleged Preference payment | New Value Given | Preference exposure (subsequent adv) | Preference exposure (remains unpaid) |
|---|---|---|---|---|
| 1. 1/10/09 | $1,000 | | $1,000 | $1,000 |
| 2. 1/20/09 | | $1,000 | $ 0 | $ 0 |
| 3. 1/30/09 | $1,000 | | $1,000 | $2,000 |
| 4. 2/10/09 | | $1,000 | $ 0 | $1,000 |
| 5. 2/20/09 | $1,000 | | $1,000 | $3,000 |
| 6. 3/1/09 | | $1,000 | $ 0 | $2,000 |

The foregoing hypothetical assumes that other defenses are not available to the preference payments in lines 1, 3, and 5, so that they are not "otherwise unavoidable," (or, stated in the positive, that the trustee can avoid all three transfers). Under the "remains unpaid" approach, the result of the analysis is that $2,000 of the transfers are avoidable because the debtor paid the creditor for two of the extensions of new value (i.e., the transfer in line 3 paid the new value given in line 2, and the transfer in line 5 paid the new value given in line 4). Only the new value extended in line 6 "remains unpaid" and is available as a § 547(c)(4)(B) defense against the three preference payments.

In the subsequent advance approach, each extension of new value can be used as a defense against the $3,000 total payments in the preference period, even if the extensions of new value were paid by the transfers in lines 3 and 5, so long as those transfers are not "otherwise unavoidable." This approach follows the plain language of the § 547(c)(4)(B).

■■■ "Where a statute is clear on its face the plain meaning of its language should be applied. The rare exception to this rule occurs when doing so would produce a result fundamentally at odds with the intent of the drafters as expressed in the legislative history." *Check Reporting Services,* 140 B.R. at 434 citing *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). In *New York City Shoes,* the Third Circuit explained that Section 547(c)(4) has two interrelated purposes: first, the section is designed to encourage trade creditors to continue dealing with troubled businesses, and second, it is designed to treat fairly a creditor who has replenished the estate after having received a preference. *New York City Shoes,* 880 F.2d at 680–81. The same purposes were discussed by the Fifth Circuit in *Toyota of Jefferson:*

Two policy considerations support the exception [of § 547(c)(4) ]. First, without the exception, a creditor who continues

to extend credit to the debtor, perhaps in implicit reliance on prior payments, would merely be increasing his bankruptcy loss. Second, the limited protection provided by the subsequent advance rule encourages creditors to continue their revolving credit arrangement with financially troubled debtors, potentially helping the debtor avoid bankruptcy altogether. Protecting the creditor who extends 'revolving credit' to the debtor is not unfair to the other creditors of the bankrupt debtor because the preferential payments are replenished by the preferred creditor's extensions of new value to the debtor.

*Toyota of Jefferson,* 14 F.3d at 1091 (citations omitted).

The plain language interpretation of § 547(c)(4)(B) furthers these purposes.

### CONCLUSION

For the reasons set forth above, the Defendants' motions for partial summary judgment will be granted, in part, to allow the Defendants to assert the subsequent new value defense under Bankruptcy Code Section 547(c)(4), as long as payments for the new value from the Debtors are not otherwise unavoidable. Pursuant to the Stipulation entered into between the Trustee and A & E (attached to docket no. 92), judgment will be entered in favor of the Trustee and against A & E in the amount of $100,930.42.

In Xymid's Motion for Partial Summary Judgment, Xymid asks the court to determine its maximum liability based on the subsequent new value defense, *before the application of other defenses.* However, until it is determined whether the Debtors' payments to Xymid are *otherwise unavoidable,* the exact amount subject to the subsequent new value defense cannot be determined. *See Hechinger,* 2004 WL 3113718 at *5, *Check Reporting,* 140 B.R.

at 437. The parties in the Xymid adversary proceeding (Adv. No. 05–30238) should meet and confer and a further hearing will be scheduled to discuss the parties' remaining pre-trial needs.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 15th day of October, 2009, upon consideration of American & Efrid, Inc's Motion for Partial Summary Judgment (Adv. No. 05–52131, docket no. 30)(the "A & E Motion"), and XYMID, LLC's Motion for Partial Summary Judgment (Adv. No. 05–30328, docket no. 74) (the "Xymid Motion"), and the Trustee's responses and related filings to the motions, after oral argument, and for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** and **DECREED** that the A & E Motion and the Xymid Motion are **GRANTED, in part,** so that the Defendants may assert the subsequent new value defense of 11 U.S.C. § 547(c)(4) against the amounts claimed to be preferential in the respective complaints, as long as payments for that new value are not otherwise unavoidable; and it is further **ORDERED** and **DECREED** that:

1. Pursuant to that Stipulation (docket no. 92) entered into between the Trustee and A & E in Adversary Proceeding No. 05–52131 (*John Wahoski, Liquidating Trustee v. American & Efrid, Inc.*), judgment is entered in favor of the Trustee and against A & E in the amount of $100,930.42.

2. The parties to Adversary Proceeding No. 05–30238 (*John Wahoski, Liquidating Trustee v. Xymid, LLC*) should meet and confer. The parties shall be prepared to discuss their remaining pre-trial needs, and, if appropriate, to set a trial

date, at a status hearing on November 5, 2009 at 10:00 a.m.