**PMC MARKETING CORP., Debtor.**

**Noreen Wiscovitch–Rentas, Chapter 7 Trustee, Plaintiff–Appellant,**

v.

**PDCM Associates, S.E., Defendant–Appellee.**

BAP No. PR 14–019.
Bankruptcy No. 09–02048–BKT.
Adversary No. 12–00086–BKT.

United States Bankruptcy Appellate Panel for the First Circuit.

Filed Sept. 30, 2014.

Rafael A. González Valiente, Esq., Santurce, on brief for Plaintiff–Appellant.

Sergio A. Ramírez de Arellano, Esq., on brief for Defendant–Appellee.

Before HILLMAN, HOFFMAN, and FINKLE, United States Bankruptcy Appellate Panel Judges.

HOFFMAN, Bankruptcy Judge.

Noreen Wiscovitch–Rentas, the chapter 7 trustee, appeals from a bankruptcy court order granting summary judgment (the "Order") in favor of the defendant-appellee, PDCM Associates, S.E. ("PDCM"), on her preference complaint. For the reasons discussed below, we **REVERSE** the Order, **VACATE** the judgment, and **REMAND** to the bankruptcy court for further proceedings, consistent with this opinion.

## *BACKGROUND*

On March 18, 2009, the debtor, PMC Marketing Corp. (the "Debtor"), filed a petition for relief under chapter 11 of the Bankruptcy Code.[1] On the petition date the Debtor operated a chain of pharmacies leasing stores in shopping centers including three owned by PDCM at the Corozal Plaza Shopping Center, in Corozal, Puerto Rico, the Victory Shopping Center in Bayamón, Puerto Rico, and the Río Grande Plaza in Río Grande, Puerto Rico.

In May 2010, the bankruptcy court converted the Debtor's chapter 11 case to chapter 7 and Ms. Wiscovitch–Rentas was appointed as the chapter 7 trustee. In March 2012, the trustee filed a singlecount complaint against PDCM pursuant to § 547, seeking to avoid as preferential transfers certain payments from the Debtor to PDCM totaling $99,061.78.

Included in the trustee's claim were two payments made by the Debtor for rent on its Corozal store. The payments were by check, each in the amount of $15,128.99. Each check covered one month's rent.[2]

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

2. The record indicates that these checks were

The Debtor issued the first check on October 31, 2008, and the second on November 28, 2008. PDCM cashed both checks on February 3, 2009.

After answering the complaint, PDCM filed a motion for summary judgment. In its accompanying memorandum of law, PDCM explained that the challenged transfers were all lease payments which the Debtor had made in connection with its store leases at the Corozal, Victory and Río Grande shopping centers. PDCM argued that the lease payments in connection with the Victory and Río Grande leases were not preferences because those leases had been assumed by the Debtor in the chapter 11 case pursuant to § 365 which required all pre- and post-petition rent arrearages to be paid in full. As for the two $15,128.99 lease payments for the Corozal store, PDCM argued that the trustee could not recover those payments as preferences because the Debtor's continued post-petition occupancy of the Corozal store constituted "new value" within the meaning of § 547(c)(4), the Debtor's receipt of which relieved PDCM of the obligation to return the otherwise avoidable transfers.

The trustee opposed PDCM's motion and filed a cross-motion for summary judgment. In her opposition, she conceded that any lease payments made by the Debtor on account of the Victory and Río Grande leases were not recoverable, as the Debtor had assumed those leases. In her cross-motion for summary judgment, the trustee asserted that the challenged Corozal rent payments satisfied all of the requirements for a preferential transfer

for overdue rent payments, although it is unclear which months were intended to be covered by the payments.

3. PDCM did not file a response to the trustee's cross-motion for summary judgment.

under § 547.[3] With respect to the two payments made in connection with the Corozal store, she argued that the § 547(c)(4) new value defense was unavailable to PDCM because for the defense to apply, the creditor must have provided the alleged new value prior to the filing of the bankruptcy petition *and* the new value must not have been repaid with an "otherwise unavoidable transfer." The trustee maintained that: (1) PDCM supplied new value "mostly post-petition;" and (2) the Debtor paid for any new value conferred by PDCM post-petition with "otherwise unavoidable transfers," namely, twelve post-petition rent payments totaling $150,539.49. Alternatively, she asserted that if PDCM could be said to have given new value, it had not given sufficient new value to offset those payments in full. Rather, she claimed, PDCM was entitled to a partial offset of $21,855.22, and that she should recover at least $8,372.75, representing the difference between the voidable preferential transfers and the new value conferred by PDCM.[4]

The bankruptcy court granted PDCM's motion for summary judgment, without a hearing, on December 23, 2013. In its Opinion and Order the court stated:

> The motion for summary judgment before this Court presents us with the question: Can the continued use of a real property after the lessee fails to comply with his payment obligation be understood to be "new value" under … § 547(c)(4)? This Court finds that *Southern Technical College, Inc. v. Hood*, 89 F.3d 1381 (8th Cir.1996) is persuasive. There, the debtor, a college

4. According to the trustee's calculations, the "new value" totaling $21,885.22 represented the lease cost for the 44 days intervening between the date of issuance of the two rent checks and the petition date.

institution, failed to timely make its payments for the lease of nonresidential real property. Said payments were made one month later. After it sought bankruptcy relief, the debtor college filed a complaint to seek out the avoidance of the late payments made to the lessor during the preferential period. The court granted summary judgment to the defendant, holding that, even though the payments sought to avoid [sic] were indeed preferential transfers, the debtor had received subsequent new value for the payments for which avoidance was sought. The District Court affirmed the bankruptcy court and the issue was further appealed to the Court of Appeals for the 8th Circuit. The Court of Appeals determined that a lessee receives new value from its lessor when it continues to use and occupy the rented property. The subsequent late payment of the rent owed will not be avoidable, even when it is a preferential transfer, if the continued use occurred before the filing for bankruptcy relief and after the preferential transfer.

The factual similarity between *Hood* and the case at bar enables this Court to apply the same legal analysis that was employed there. In the instant case, the Debtor received two months of continued use, in essence rent free, of the leased property even when it failed to pay the required rent and maintenance fees. Afterwards, but still pre-petition, the Debtor tardily paid the rent and maintenance owed to the lessor. The

Trustee's avoidance action ensued. Being as there is no trial-worthy issue of law, this Court determines that the transfers made as late payment of rent and maintenance fees by the Debtor, where it remained in continued use of the property, are unavoidable transfers even though they were made during the preferential period. The Debtor received subsequent new value as defined in [§] 547(c)(4), consisting of the continued use of the nonresidential real property. This, in turn, benefit[t]ed the Debtor by allowing it to continue its business operations in the property.

On the same date, the bankruptcy court entered judgment in favor of PDCM and dismissed the trustee's complaint with prejudice.[5]

One week later, the trustee filed a motion for reconsideration, asserting that the bankruptcy court erred in failing to acknowledge that: (1) the alleged new value provided by PDCM did not exceed $21,855.22; and (2) the alleged new value was wholly repaid by otherwise unavoidable transfers totaling $150,539.49. The trustee also urged the bankruptcy court to "take into account that the December 23, 2013 Opinion and Order [wa]s in direct opposition to a previous Opinion and Order entered in a related, but nearly identical case. *See PMC v. BPP Retail Properties, LLC*, Case No. 12–0093, Dkt. No. 47."[6] As an alternative to reconsideration, the trustee asked the court to issue further

---

**5.** The bankruptcy court did not address the trustee's cross-motion for summary judgment in the December 23, 2013 Opinion and Order or in its subsequent judgment.

**6.** The trustee's reference is to another adversary proceeding arising out of the Debtor's chapter 11 case, *Rentas v. BPP Retail Props. LLC (In re PMC Mktg. Corp.)*, Adv. No. 12–00093, 2013 WL 5741826 (Bankr.D.P.R. Oct.

23, 2013). There, the bankruptcy court ruled in favor of the trustee on her preference claim on the grounds that the lessor had failed to satisfy its burden under § 547(c)(4), including that the payment for the subsequent new value was itself an avoidable transfer. *See id.* at *6–7. The *BPP* case involved a different defendant and different facts and has no binding effect on our analysis here.

**154**

findings pursuant to Fed.R.Civ.P. 52(b), including but not limited to the following:

1. "The transfers occurred on February 3, 2009."

2. "There are only forty-four (44) days between the date of the payments and the date of the filing of the petition."

3. "Any possible new value accumulated by the Plaintiff would be for the 44 days of rent accumulated between the date of the payments and the date of the filing of the petition."

4. "A quick calculation of the rent accrued during the aforementioned dates shows that the rent for the 44 days is approximately $21,885.22."

5. "The difference between the amount of the transfer and the alleged new value is $8,372.75."

6. "The transfers were to a creditor of the Debtor, on account of an antecedent debt, during the 90–day period prior to the filing of the petition, while the Debtor was insolvent and which would allow the creditor to receive more than it would under a Chapter 7 liquidation."

7. "Debtor made twelve (12) payments for a total amount of $150,539.49 in payments on account of rent for the Property after the filing of the petition."

PDCM opposed reconsideration, reiterating that the Debtor received new value after making the alleged preference payments in the form of its continued use and occupancy of the Corozal store for the months of February and March 2009, for which rent remained unpaid as of the petition date. The court denied reconsideration in an order entered on March 4, 2014. This appeal ensued.

In her notice of appeal, the trustee indicated that she was appealing the order granting PDCM's summary judgment motion as well as the order denying her reconsideration motion. However, because both her statement of issues and her brief on appeal are silent regarding the denial of reconsideration, we consider the appeal of the March 4, 2014 order denying reconsideration waived. *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 645 (1st Cir.2000) (holding that failure to brief an argument constitutes waiver); *City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91 (1st Cir.2011) (holding that issue omitted from statement of issues is waived).[7]

The trustee identifies two issues on appeal:

I. Whether the Bankruptcy Court erred in granting the Defendant's Motion for Summary Judgment, in as much as [sic] the "new value" defense does not apply because the alleged "new value" provided by the Defendant was later paid by an otherwise unavoidable transfer.

II. In the alternative, whether the Bankruptcy Court erred in granting the Defendant's Motion for Summary Judgment and dismissing the complaint in full, in as much as [sic] the amount of the alleged "new value" provided by the defendant does not cover the whole of the preferential transfer.

On appeal, the parties largely reiterate the arguments presented in the bankruptcy court. PDCM amplifies its § 547(c)(4) defense in its brief, asserting that "[t]here is no evidence of subsequent payment for the Corozal Shopping Center premises ... by an 'otherwise unavoidable transfer,'" and that there is no evidence of *any* post-

---

**7.** In her notice of appeal, statement of issues, and her brief, the trustee is also silent regarding the bankruptcy court's failure to address

her cross-motion for summary judgment. That issue, therefore, is not before us.

petition payment toward the new value in question, namely two months of unpaid pre-petition rent. PDCM also rejects the trustee's argument that PDCM gave only 44 days of new value, newly asserting that the lease for the Corozal store was not subject to proration on a daily basis and thus two full months of new value should be applied.

### JURISDICTION

A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (internal quotations and citation omitted). A panel may hear appeals from "final judgments, orders, and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations, citation, and footnote omitted). An order "granting summary judgment is a final order for purposes of appeal." *Cadle Co. v. Andersen (In re Andersen)*, 476 B.R. 668, 671 (1st Cir. BAP 2012) (internal quotations and citation omitted).

### STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010) (citation omitted). A factual finding is clearly erroneous "when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (internal quotations and citation omitted).

### DISCUSSION

### I. The Legal Standards

#### A. Summary Judgment

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762 (1st Cir.1994); *see also Soto–Rios v. Banco Popular de P.R.*, 662 F.3d 112, 115 (1st Cir.2011). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." *In re Varrasso*, 37 F.3d at 762 (citations omitted); *see also Soto–Rios v. Banco Popular de P.R.*, 662 F.3d at 115; Fed. R. Bankr.P. 7056; Fed. R.Civ.P. 56.[8] "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso*, 37 F.3d at 763 (citation omitted). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." *Id.* at 763 n. 1 (internal quotations and citation omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." *Id.* (inter-

---

8. Fed.R.Civ.P. 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a).

nal quotations and citation omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

### B. Preferences and the § 547(c)(4) Defense

■ "Payments by a debtor to a creditor 'for or on account of an antecedent debt' made during the ninety days immediately preceding the filing of a bankruptcy petition (and that meet other criteria) are preferential transfers or 'preferences.'" *Bogdanov v. Avnet, Inc.*, No. 10–CV–543–SM, 2011 WL 4625698, at *2 (D.N.H. Sept. 30, 2011) (quoting 11 U.S.C. § 547(b)). "In unofficial ... terms, a preference is a transfer of the debtor's property on the eve of bankruptcy to satisfy an old debt." *Id.* (internal quotations and citations omitted).

■ "Preferences may be avoidable (*i.e.*, voidable) by the trustee." *Id.* at *3 (citing 11 U.S.C. § 547(b)). "If a preference is avoided, 'the trustee may recover, for the benefit of the estate, the property transferred." *Id.* (quoting 11 U.S.C. § 550(a)). "Avoiding preferences generally puts creditors on equal footing with each other for the purpose of distributing the debtor's estate, and discourages 'creditors from hastily forcing troubled businesses into bankruptcy.'" *Id.* (quoting

*Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 40 (2d Cir.1996)). "The trustee carries the burden of proof on all elements of a preference listed in § 547(b)." *Phoenix Rest. Grp., Inc. v. Proficient Food Co. (In re Phoenix Rest. Grp., Inc.)*, 373 B.R. 541, 546 (M.D.Tenn. 2007) (citing 11 U.S.C. § 547(g)).

■ "The preference defendant may raise one or more of eight statutory defenses, which are listed in § 547(c), and the preference defendant carries the burden of proof on each defense." *Id.* (citing 11 U.S.C. § 547(g)). "[T]he exceptions enumerated in [§] 547(c) [are] designed to rescue from attack in bankruptcy those kinds of transactions, otherwise fitting the definition of a preference, that are essential to commercial reality and do not offend the purposes of preference law, or that benefit the ongoing business by helping to keep the potential bankrupt afloat." *Official Comm. of Unsecured Creditors of Maxwell Newspapers, Inc. v. Travelers Indem. Co. (In re Maxwell Newspapers, Inc.)*, 192 B.R. 633, 635 (Bankr.S.D.N.Y. 1996) (internal quotations and citation omitted).

In this case, PDCM does not dispute that the two overdue Corozal store rent payments were preferential transfers. The issue is the availability of the "subsequent new value defense" set forth in § 547(c)(4), which provides:

(c) The trustee may not avoid under this section a transfer—

. . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an other-

wise unavoidable transfer to or for the benefit of such creditor[.]

11 U.S.C. § 547(c)(4).

 The subsequent new value defense has two interrelated purposes, first, "to encourage trade creditors to continue dealing with troubled businesses, and second, ... to treat fairly a creditor who has replenished the estate after having received a preference." *Wahoski v. Am. & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 130 (Bankr.D.Del.2009) (citing *N.Y.C. Shoes, Inc. v. Bentley Int'l, Inc. (In re N.Y.C. Shoes, Inc.)*, 880 F.2d 679, 680–81 (3d Cir.1989)). To prevail in asserting the § 547(c)(4) defense, a creditor bears the burden of proving three elements. *Friedman's Liquidating Trust v. Roth Staffing Cos. (In re Friedman's Inc.)*, 738 F.3d 547, 552 (3d Cir.2013) (citing *Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 402 (3d Cir.2009)); *In re N.Y.C. Shoes, Inc.*, 880 F.2d at 680.

### 1. New Value

The first element requires that "new value was extended after the preferential payment sought to be avoided." *Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1093 n. 2 (5th Cir.1994) (citation omitted); *see also In re Pillowtex Corp.*, 416 B.R. at 129 (citation omitted). The Bankruptcy Code defines the term "new value" as:

> [M]oney or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2); *see also Bogdanov v. Avnet, Inc.*, 2011 WL 4625698, at *10.

 "Whether something is new value presents a question ... of fact." *Bogdanov v. Avnet, Inc.*, 2011 WL 4625698, at *10 (internal quotations and citation omitted). "The extension of new value need not be directly connected to the preceding preferential transfer in order to shelter it ..., but the determination of new value is still based upon the premise that an augmentation or material benefit to the debtor's estate has occurred that offsets the reduction in the estate caused by the preferential transfer." *Moser v. Bank of Tyler (In re Loggins)*, 513 B.R. 682, 713 (Bankr. E.D.Tex.2014) (internal quotations and citations omitted). "[T]he vast majority of courts that have considered this issue have concluded that new value advanced after the petition date should not be considered in a creditor's new value defense." *In re Friedman's Inc.*, 738 F.3d at 557 (citations omitted). One reason given is that "the specific language 'to or for the benefit of the debtor' [implies] that the subsequent advances of new value are only those given pre-petition, because any post-petition advances are given to the debtor's estate, not the debtor." *Clark v. Frank B. Hall & Co. of Colo. (In re Sharoff Food Serv., Inc.)*, 179 B.R. 669, 678 (Bankr.D.Colo.1995) (citing *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1284 (8th Cir.1988)). Put another way, "the defense of new value is available where the new value effectively repays the earlier preference, and offsets the harm to the debtor's other creditors." *Moltech Power Sys., Inc. v. Truelove & Maclean, Inc. (In re Moltech Power Sys., Inc.)*, 326 B.R. 179, 184 (Bankr.N.D.Fla.2005) (internal quotations and citation omitted). As one court stated, "the creditor is entitled to a dollar-for-dollar offset." *Wheeling Nat'l Bank v. Meredith (In re Meredith Manor, Inc.)*,

103 B.R. 118, 120 (S.D.W.Va.1989), *aff'd*, *Crichton v. Wheeling Nat'l Bank (In re Meredith Manor, Inc.)*, 902 F.2d 257 (4th Cir.1990).

"Most courts addressing [the] issue have held that where a debtor is a lessee on an unexpired real property lease, 'new value' is created by the debtor's right to continue a leasehold estate in exchange for the rental payment." *Gen. Time Corp. v. Schneider Atlanta, L.P. (In re Gen. Time Corp.)*, 328 B.R. 243, 247 (Bankr.N.D.Ga.2005) [9] (citations omitted); *see also S. Technical Coll., Inc.*, 89 F.3d at 1384 (holding "[e]ach month, a lessee receives new value from its lessor when it continues to use and occupy the rented property"); *Brown v. Morton (In re Workboats Nw., Inc.)*, 201 B.R. 563, 567 (Bankr.W.D.Wash.1996) (holding that debtor's continued occupancy of building despite delinquency of rent payments constituted new value extended by the landlord).[10]

## 2. Not Secured with Otherwise Unavoidable Security Interest

The second element of the § 547(c)(4) defense requires that "the new value is not secured with an otherwise unavoidable security interest[.]" *In re Toyota of Jefferson, Inc.*, 14 F.3d at 1093 n. 2 (citation omitted); *see also Appalachian Oil Co. v. Va. State Lottery Dep't (In re Appalachian Oil Co.)*, A.P. No. 10–5064, 2012 WL 4754675, at *8 (Bankr.E.D.Tenn. Oct. 4, 2012) (internal quotations and citation omitted); *In re Pillowtex Corp.*, 416 B.R. at 129 (citation omitted). Here, neither party contends that any new value con-

ferred by PDCM was secured by a security interest in any property.

## 3. Otherwise Unavoidable Transfer

The third element, set forth in subsection (B) of § 547(c)(4), requires the creditor to establish that "on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]" 11 U.S.C. § 547(c)(4)(B). The proper application of this subsection, with its contorted, double-negative prose, has bedeviled many a reader. Professor Vern Countryman offers a clear and concise elucidation of § 547(c)(4)(B) in a Vanderbilt Law Review article:

> If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, and if these subsequent payments are themselves voidable as preferences (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the earlier voidable preference.

Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand. L. Rev. 713, 788 (May 1985) (footnote omitted). In other words, payment by a debtor for new value only neutralizes the creditor's new value defense if that payment is unavoidable.

Perhaps reflecting § 547(c)(4)(B)'s challenging language, courts are in disagreement as to § 547(c)(4)(B)'s application. *In re Pillowtex Corp.*, 416 B.R. at 126–27.

---

**9.** In *General Time*, the issue of whether continued occupancy pursuant to a lease constitutes "new value" arose in the context of § 547(c)(1) and the creditor's assertion of the "contemporaneous exchange" defense.

**10.** *But see Charisma Inv. Co., N.V. v. Airport Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 841 F.2d

1082, 1084 (11th Cir.1988) (holding lessor's forbearance in terminating lease following debtor's default did not constitute "new value" for purpose of subsequent advance exception where debtor did not continue to use the leased property).

Published decisions in the early years following enactment of the Bankruptcy Code concluded that § 547(c)(4)(B) requires simply that "the new value must remain unpaid." *See, e.g., In re N.Y.C. Shoes, Inc.,* 880 F.2d at 680; *In re Jet Fla. Sys., Inc.,* 841 F.2d at 1083; and *In re Prescott,* 805 F.2d 719, 728 (7th Cir.1986) (all holding new value must remain unpaid). For many years, this was considered to be the "'majority rule.'" *Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.),* 462 B.R. 66, 70 (Bankr.S.D.N.Y.2011) (quoting *Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.),* 52 F.3d 228, 231 (9th Cir.1995)). Although the United States Court of Appeals for the First Circuit has not weighed in on this issue, an "emerging trend" among other courts, consistent with Professor Countryman's interpretation, is that "the new value defense is available, despite payment, if the payment was an avoidable transfer." *In re Musicland Holding Corp.,* 462 B.R. at 70–71; *see, e.g., In re IRFM, Inc.,* 52 F.3d at 231; *In re Toyota of Jefferson, Inc.,* 14 F.3d at 1093 n. 2; *Bogdanov v. Avnet,* 2011 WL 4625698, at *4–5; *In re Pillowtex Corp.,* 416 B.R. at 129 n. 7; and *In re Maxwell Newspapers, Inc.,* 192 B.R. at 638–40 (all holding that for § 547(c)(4)(B) to apply, new value may be paid so long as the payment is avoidable).[11]

## II. The Legal Standards Applied

As the preference defendant, PDCM had the burden of proof with respect to each element of its § 547(c)(4) defense. *In re Phoenix Rest. Grp., Inc.,* 373 B.R. at 546 (citing 11 U.S.C. § 547(g)). To prevail on summary judgment, PDCM was required to adduce such evidence as to each element of its defense as would permit PDCM at trial to withstand a motion for directed verdict under Fed.R.Civ.P. 50. *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505. We may not affirm the grant of summary judgment if there is the "slightest doubt" as to an issue of fact. *Morrissey v. Procter & Gamble Co.,* 379 F.2d 675, 677 (1st Cir.1967) (internal quotations and citations omitted).

■ Upon the record before us, we conclude that PDCM has not met its burden. With respect to the critical first element of the § 547(c)(4) defense, the giving of new value, the parties disagree as to the timing and extent of new value. The trustee maintains that PDCM provided the alleged new value "mostly postpetition," thereby rendering the defense unavailable according to the majority of court decisions, or, alternatively, that the new value received pre-petition was insufficient to cover the full amount of the preferential transfers. PDCM counters that the new value was provided pre-petition and that it is entitled to a full offset. As to the third element of the § 547(c)(4) defense, the trustee asserts that payments for new value were unavoidable post-petition transfers while PDCM claims those payments were not applied to the new value it extended. These factual disputes, which the bankruptcy court ignored in its Opinion and Order, are material.

Having determined that there exist genuine issues of material fact as to the availability of the subsequent new value defense in this case, we conclude that the

---

11. Courts are also divided as to whether the debtor's payment toward the new value must be made pre-petition or whether post-petition payments defeat a creditor's new value defense. *In re Friedman's Inc.,* 738 F.3d at 554–

· 57 (discussing cases and holding "numerous contextual indicators in the Code ... point to the petition date as a cutoff for analysis of the new value defense").

bankruptcy court erred in granting PDCM's motion for summary judgment.

### CONCLUSION

Based on the foregoing, the Opinion and Order is hereby **REVERSED** and the judgment is **VACATED**. We **REMAND** to the bankruptcy court for further proceedings consistent with this opinion.